UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JONATHAN MOTA,<br><br>    Defendant. | Case No. 13-cr-00093-JST-1<br><br>**ORDER GRANTING MOTION TO EXCLUDE EVIDENCE PURSUANT TO FED. R. EVID. 404(B) AND GRANTING IN PART MOTION FOR SEVERANCE**<br><br>Re: Dkt. Nos. 37, 38 |

The Court now has two motions before it. First, defendant Jonathan Mota moves to sever Count Four of the indictment, which charges him with being a felon in possession of a firearm, from the remaining counts. ECF No. 38. He also moves to preclude the introduction of evidence of a bank robbery he committed in December 2006 on the grounds that such evidence is not admissible under Rule 404 of the Federal Rules of Evidence, and that any probative value the evidence has it outweighed by undue prejudice. ECF No. 37

The Court will grant the motion to sever in part, and will grant the 404(b) motion to exclude evidence of the bank robbery.

## I. FACTUAL BACKGROUND

Counts One through Three of the indictment in this case charge defendant Jonathan Mota with robbing the Mount Konocti Gas & Mart store in Kelseyville, Lake County, California on January 18, 2013, and killing one of the store clerks with a revolver. ECF No. 19. Count One charges him with a robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a); Count Two charges him with use and possession of a firearm during the robbery charged in Count One, in violation of 18 U.S.C. § 924(c); and Count Three charges Mota with use of a firearm causing murder during the robbery charged in Count One, in violation of 18 U.S.C. § 924(j).

1  Count Four of the indictment charges him with being a felon in possession of a different firearm, a Zastava 7.62 rifle, in violation of 18 U.S.C. § 922(g).  That gun was found in a search of his mother's home on January 26, 2013, after the Kelseyville robbery was committed.  Defendant describes that gun as "a large weapon that has an appearance similar to an assault rifle without a shoulder stock, and has a 30-round magazine."  ECF No. 38 at 2.  The Government does not allege that Mota used the Zastava in the robbery.

Mota previously committed a bank robbery in December 2006, for which he was convicted in January 2008.  The Government proposes to introduce evidence of the bank robbery under Rule 404(b) of the Federal Rules of Evidence on the theory that it is "inextricably intertwined" with the crimes charged in the indictment, and as evidence of defendant Mota's identity and modus operandi.  Defendant has moved to prevent the introduction of this evidence.  ECF No. 37.

## II.     LEGAL STANDARD

Under Fed.R.Crim.P. 14(a), "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

Pursuant to Rule 404 of the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(a), but the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b).

When other acts evidence is introduced to prove identity, "the characteristics of the other crime or act must be sufficiently distinctive to warrant an inference that the person who committed the act also committed the offense at issue.  Conversely, if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise."  United States v. Luna, 21 F.3d 874, 878-79 (9th Cir. 1994) (quotations and citations omitted).  "[W]hen the inference of identity is weak, evidence of prior crimes should be excluded because under such

circumstances the prejudicial effect of the evidence inevitably outweighs the probative value of that evidence." United States v. Powell, 587 F.2d 443, 448 (9th Cir. 1978).

### III.   ANALYSIS

#### A.   Severance of the Felon In Possession Charge

Mota moves to sever the trial of Count Four of the indictment, which charges him with being a felon in possession of a firearm. As the Ninth Circuit has recognized, there is a significant risk of prejudice to a criminal defendant when a felon-in-possession charge is tried together with another felony charge. United States v. Nguyen, 88 F.3d 812, 815-16 (9th Cir. 1996). This prejudice arises from the jury being told that the defendant is both someone who possesses guns separately from the commission of the alleged robbery, and that he has previously been convicted of a felony. United States v. Lewis, 787 F.2d 1318, 1323 (9th Cir.) opinion amended on denial of reh'g, 798 F.2d 1250 (9th Cir. 1986).[1] "When trying an ex-felon count together with other counts, the trial judge must 'proceed with caution' to avoid undue prejudice." United States v. Dockery, 955 F.2d 50, 53 (D.C. Cir. 1992). Here, that prejudice is magnified, because the firearm supporting the ex-felon count is an assault-style rifle, and the other charges against Mota include murder with a gun.

The Government acknowledges this prejudice, but argues that a curative jury instruction will protect Mota from it. ECF No. 48 at 14-15. Under the law, however, the "preferred alternative" is severance or bifurcation, because cautionary jury instructions are rarely sufficient to protect the defendant's right to a fair trial. Nguyen, 88 F.3d at 816, 818; see also United States v. Silva, No. CR. 05-30063-HO, 2007 WL 2890998, at *3 (D. Or. Sept. 27, 2007) (holding that trial would be bifurcated "at a minimum" to prevent prejudice from unitary trial on felon-in-possession charge and unrelated charges).

After weighing these concerns, the Court concludes that trying Count Four with the other counts would unduly prejudice defendant Mota's right to a fair trial. The Court will bifurcate the

---

[1] In light of these concerns, courts have been more willing to sever felon-in-possession charges than other ones. 1A Charles Alan Wright, Andrew D. Leipold, Peter J. Henning, Sarah N. Welling, Fed. Prac. & Proc. Crim. § 222 (Prejudicial Joinder of Offenses) (4th ed. 2008).

trial on this charge. The Court will try Counts One through Three first, followed by a trial to the same jury on Count Four.

### B. Evidence Concerning The Zastava Rifle

Even if the felon-in-possession count is tried separately, the Government argues that evidence of the Zastava rifle is admissible in the trial of the remaining counts "because [Mota] obtained the first firearm – the Zastava that is the subject of Count Four – for the purpose of committing a robbery, and then the defendant needed to obtain a second firearm to commit the instant robbery and murder, in part, to pay for the first firearm." ECF No. 48 at 5. The Government states that it has a cooperating witness who will testify that Mota made certain admissions to him while both men were in custody. Among these admissions is that Mota purchased the Zastava on credit, and needed to commit a robbery to obtain the money to pay for it. Thus, it argues that the evidence is admissible under Evidence Code section 404(b).

Here, the Court finds that evidence of the existence of the rifle, as well as Mota's alleged debt incurred in acquiring the rifle, do constitute evidence of motive and are potentially admissible pursuant to Rule 404(b). See United States v. Jones, 512 F. App'x 718, 719 (9th Cir. 2013) (evidence of a "no-contact" violation admissible to show defendant's motive to hide the gun that was the baisis for felon-in-possession charge).

Even if evidence of the rifle is potentially admissible, however, the Court still must determine whether its probative value was substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403; United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). As already indicated, it would be difficult for Mota to receive a fair trial if evidence of the rifle were admitted. The Court finds that this evidence must be excluded on the separate ground that it fails under Rule of Evidence 403.

### C. "Inextricably Intertwined" Evidence

The Government next argues that evidence of the Zastava rifle should be admitted on the grounds that evidence of the rifle is "inextricably intertwined" with the robbery. It argues that evidence of the rifle should be admitted to corroborate the cooperating witness's testimony and

1    rebut charges that his testimony is fabricated. The United States also seeks to admit evidence of a

2    prior bank robbery Mota committed in December 2006. As with the Zastava rifle, the

3    Government argues that this evidence is "inextricably intertwined" with the evidence of the

4    Kelseyville robbery because admission of the bank robbery evidence will also bolster the

5    credibility of the Government's informant.

6        "Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves

7    as a basis for the criminal charge,' or 'was necessary to . . . permit the prosecutor to offer a

8    coherent and comprehensible story regarding the commission of the crime.'" United States v.

9    Rrapi, 175 F.3d 742, 748-49 (9th Cir. 1999) (citing United States v. Vizcarra–Martinez, 66 F.3d

10   1006, 1012–13 (9th Cir.1995) (ellipse in original).

11       In a persuasive opinion, the Third Circuit has described "at least three problems" with the

12   "inextricably intertwined" test. The first is that "the test creates confusion because, quite simply,

13   no one knows what it means." United States v. Green, 617 F.3d 233, 246 (3d Cir. 2010) (footnote

14   omitted). This lack of clear meaning "invites sloppy, non-analytical decision-making." Id.

15   (quoting David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar

16   Events § 5.2 at 327 (2009)). The second problem with the "inextricably intertwined" test is that

17   resort to it is unnecessary, because "[i]f the so-called 'intrinsic' act is indeed part of the crime

18   charged, evidence of it will, by definition, always satisfy Rule 404(b)." Id. at 247. The third

19   problem "is that some of [the test's] broader formulations, taken at face value, classify evidence of

20   virtually any bad act as intrinsic." Id. at 248. And once the Court does that, it eviscerates the

21   protections of Rule 404(b). Id.

22       Here, the Court concludes that neither the bank robbery evidence nor the Zastava rifle

23   evidence meet the "inextricably intertwined" test. The bank robbery does not have any connection

24   to the Kelseyville robbery, and the rifle's connection is weak. The only respect in which evidence

25   of the bank robbery is said to be "inextricably intertwined" is that it is one of the details Mota

26   allegedly related to a jailhouse informant. But there are many such details, and it cannot be the

27   case that all of them are necessary to buttress the informant's credibility or "permit the prosecutor

28

to offer a coherent and comprehensible story." Similarly, obtaining money to pay his debt on the rifle is said to be Mota's motive for committing the Kelseyville robbery, but – as the Government acknowledges – his need for money had many alleged sources, including his inability to find a job, his need for money to support his unemployed pregnant girlfriend, and his $200 a week marijuana habit. ECF No. 48 at 3. It also cannot be the case that *anything* Mota told the informant is "inextricably intertwined," since an exception of that scope would swallow the rule embodied by 404(b). Green, 617 F.3d at 248.

Nor can the Court conclude that evidence of the bank robbery or rifle "constitutes a part of the transaction that serves as a basis for the criminal charge." The robbery is unrelated, and the rifle is barely related, if at all.

Evidence of the rifle and bank robbery are not "inextricably intertwined" with the Kelseyville robbery.

### D.     The Bank Robbery Was Not A Signature Crime

Lastly, the Government also argues that evidence of the bank robbery is admissible under Rule of Evidence 404(b) because it and the Kelseyville robbery were "signature crimes." ECF No. 48 at 11-12. Federal Rule of Evidence 404(b) states that evidence of other crimes may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "Signature crime" evidence is one way to prove identity.

Such evidence is appropriately viewed with caution, however. The "underlying premise" of our criminal justice system" is that "the defendant must be tried for what he did, not for who he is." United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). Accordingly, "the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing." Id.

To admit evidence of uncharged crimes to show identity, the Court demands a high degree of similarity between the charged and the uncharged crimes:

> To be allowed, the prior bad acts must be sufficiently similar to
> support an inference of identity, such as unique or peculiar conduct

which may constitute a personal signature. However, because of the danger that such evidence may be nothing more than propensity evidence, the Rule 404(b) standard is particularly stringent when the evidence is offered only for this purpose.

United States v. Elias, No. CR 98-00070-E-BLW, 1999 WL 1204529, at *5 (D. Idaho Apr. 20, 1999). "[I]f the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise." United States v. Luna, 21 F.3d 874, 878-79 (9th Cir. 1994) (quoting United States v. Perkins, 937 F.2d 1397, 1400 (9th Cir.1991)).

To meet its burden here, the Government points to the following facts allegedly present in both robberies: Mota used a female acquaintance to wait in the vehicle during the robbery; he used a stolen vehicle for the robbery; the vehicle was stolen just before the robbery; the vehicles were wiped down following the robbery to remove forensic evidence; Mota walked into the robbery already brandishing a firearm; Mota used a revolver; Mota held the gun sideways and aggressively approached the victims; Mota used a similar demand of "give me all your money" and didn't say anything else; the robberies occurred in Lake County, California; Mota wore a black mask on his face; Mota wore black gloves; and Mota wore a hooded sweatshirt with the hood pulled over his head. ECF No. 48 at 11.

This evidence does not show the required degree of similarity. Rather, it consists of traits common to any number of armed robberies. The Government offered a strikingly similar list in Luna:

> All the robberies were conducted takeover style, i.e., rather than robbing individual tellers and attempting to hide that fact from the rest of the bank, the robbers announced their presence to one and all and took control of the bank. The robberies all occurred between 10:30 and 11:30 a.m., and the robbers entered the banks noisily. In each case, the robbers wore sweatpants, sweatshirts, some kind of mask, and gloves. The robbers were armed. At least one robber jumped over the counter. The robbers swore at the tellers and pushed, tossed, or struck one or more bank employees. They took money out of one or more of the tellers' drawers and put it into bags. They used a getaway car in all of the robberies, and in both of the uncharged crimes and one of the charged crimes, they abandoned

the car with its motor running.

Luna, 21 F.3d at 880 (footnote omitted).  As the Court does here, the Luna court determined that the evidence of other robberies was not admissible, because "the common features in [that] case were largely generic."  United States v. Luna, 21 F.3d 874, 881 (9th Cir. 1994).

The Luna court found helpful guidance in a case from the Fifth Circuit, United States v. Myers, 550 F.2d 1036 (5th Cir. 1977).  In that case, the Government alleged that the charged and uncharged acts had these traits in common:

> (1) both crimes were bank robberies, (2) perpetrated ... between two and three o'clock in the afternoon. In both robberies the victimized bank was (3) located on the outskirts of a town, (4) adjacent to a major highway. In both robberies the participants (5) used a revolver, (6) furnished their own bag for carrying off the proceeds, and wore (7) gloves and (8) masks crudely fashioned from nylon stockings.

Id. at 1046.  The Fifth Circuit held that each of these elements "is a common component of armed bank robbery," and hence the fact that those elements were present in both the charged and the uncharged robberies meant virtually nothing.  Id.  Similarly the Luna court noted, "the government relies on many of the same 'common components': guns, masks, gloves, bags.  Other common elements also collapse into generic features of a takeover robbery, in which it is almost by definition necessary to intimidate people: the loud entry; the profanity; the abuse of bank employees."  21 F.3d at 881.

So it is here.  The list of traits provided by the Government in this case is as generic as the lists in Myers and Luna.  There is nothing unusual about the brandishing of a revolver, a demand for money, the use of a stolen vehicle, or the use of black gloves.  "The robbery at issue did not involve any 'peculiar, unique, or bizarre' conduct so as to constitute a personal signature; rather it was similar to most bank robberies."  United States v. Perkins, 937 F.2d 1397, 1400-01 (9th Cir. 1991).  Certainly the Court cannot say that the inference of identity flowing from these alleged

similarities is "extremely strong." Myers, 550 F.2d at 1045.[2]

Even if the bank robbery were admissible under the "inextricably intertwined" exception or as a "signature crime," the Court would still be required to determine whether its probative value was substantially outweighed by the danger of unfair prejudice to the defendant. Fed.R.Evid. 403; United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985). Given the very slight probative value of this evidence, and the clear potential for prejudice to the defendant – that he would be seen to be someone capable of armed robbery, when he denies being the robber in this case – the Court finds that this evidence must also be excluded on the separate ground that it fails under Rule of Evidence 403.

## CONCLUSION

For the foregoing reasons, Mota's motion to sever is granted in part; the Court will bifurcate the trial on Count Four. The motion to exclude evidence of Mota's prior bank robbery is granted.

**IT IS SO ORDERED.**

Dated: February 11, 2015

_____
JON S. TIGAR
United States District Judge

---

[2] See also 22B Charles Alan Wright & Kenneth W. Graham, Jr. Fed. Prac. & Proc. Evid. § 5246 (Other Crimes, Wrongs, or Acts—Identity) (2014) ("Commission of bank robberies by persons wearing ski masks, goggles, and jumpsuits and using a stolen vehicle for getaway car . . . may be unusual in Louisville; in Los Angeles it is a hackneyed modus operandi.").